UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

KASSIN APPLING,

                    Plaintiff,

        v.

CITY OF NEW YORK, DETECTIVE WILSON
VERDESOTO, and POLICE OFFICER KEVIN
FORRESTER,

                  Defendants.

---------------------------------------------------------------

**MEMORANDUM & ORDER**
18-CV-5486 (MKB)

MARGO K. BRODIE, United States District Judge:

        Plaintiff Kassin Appling commenced the above-captioned action against Defendants the

City of New York, Detective Wilson Verdesoto, and Police Officer Kevin Forrester on October

1, 2018, bringing claims of false arrest, malicious prosecution, denial of the right to a fair trial,

and deprivation of liberty without due process pursuant to 42 U.S.C. § 1983 against Detective

Verdesoto and Officer Forrester and a *Monell* claim against the City of New York arising out of

Plaintiff's arrest on January 27, 2017, for criminal possession of a weapon.  (Compl. ¶¶ 22–34,

Docket Entry No. 1.)  Defendants move for summary judgment pursuant to Rule 56 of the

Federal Rules of Civil Procedure, and Plaintiff opposes the motion as to his claims against

Detective Verdesoto for malicious prosecution and denial of the right to a fair trial.[1]

---

[1]  (Defs.' Mot. for Summ. J., Docket Entry No. 38; Defs.' Mem. in Supp. of Defs.' Mot.
("Defs.' Mem."), Docket Entry No. 41; Defs.' Reply in Supp. of Defs.' Mot. ("Defs.' Reply"),
Docket Entry No. 43; Pl.'s Mem. in Opp'n to Defs.' Mot. ("Pl.'s Opp'n"), Docket Entry No. 42-
3.)  Plaintiff concedes all claims against the City of New York and Police Officer Forrester,
(Pl.'s Opp'n 1), and the Court dismisses those claims and Defendants.  While Plaintiff has not
stated that he concedes his claims against Detective Verdesoto for false arrest and deprivation of
liberty without due process, his opposition does not mention these claims or respond to

For the reasons set forth below, the Court denies Defendants' motion.

## I. Background

The following facts are undisputed unless otherwise noted.

### a. Events giving rise to Plaintiff's arrest

On December 21, 2016, Plaintiff was in his apartment in the Breevort Houses housing complex in Brooklyn, New York, with David Cheeks, Donny Jones, "Shermel," and Shermel's cousin Larry Mackie. (Defs.' Stmt. of Undisputed Facts pursuant to Local Rule 56.1 ("Defs.' 56.1") ¶¶ 1–4, Docket Entry No. 40.) Around 8:30 PM, the group left the building via a ramp attached to the building. (*Id.* ¶ 5.) At the same time, Detective Verdesoto, Officer Forrester, and Sergeant DiMartino of the New York Police Department ("NYPD") were approaching the building in an unmarked police car so that they could conduct a routine security check in the building. (*Id.* ¶¶ 6, 8.) As Plaintiff's group walked down the ramp to leave the building, Defendants got out of their car and walked toward Plaintiff and his friends. (*Id.* ¶¶ 9–11.) The area in which Plaintiff and his friends were walking was well lit, and Detective Verdesoto recognized Plaintiff because he and Plaintiff had seen each other in person before and he had also seen Plaintiff's photograph six or seven months prior during briefings related to an

---

Defendants' arguments with respect to these claims. (Defs.' Reply 2. *See generally* Pl.'s Opp'n.) Therefore, the Court dismisses them as abandoned. *See Jackson v. Fed. Exp.*, 766 F.3d 189, 198 (2d Cir. 2014) (holding that "in the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition [to summary judgment] that relevant claims . . . that are not defended have been abandoned"); *see also Colbert v. Rio Tinto PLC*, 824 F. App'x 5, 11 (2d Cir. 2020) ("We have in the past expressly approved of this practice in the context of summary judgment motions." (citing *Jackson*, 766 F.3d at 198)); *Maher v. All. Mortg. Banking Corp.*, 650 F. Supp. 2d 249, 267–68 (E.D.N.Y. 2009) (collecting cases and stating "[f]ederal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way" (quoting *Taylor v. City of New York*, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003))).

investigation of the Breevort Houses.  (*Id.* ¶¶ 13–16.)  Detective Verdesoto was also aware of an active bench warrant for Plaintiff's arrest for failure to appear in court.  (*Id.* ¶ 17.)

As Detective Verdesoto approached Plaintiff's group, he observed one of the individuals reach into his jacket pocket, remove a firearm, and throw it over a nearby fence into a common area of the housing complex.[2]  (*Id.* ¶¶ 18–19.)  At the time, the five individuals were clustered together, standing within several feet of one other, and Detective Verdesoto was less than ten feet away from the individual he observed throw the gun.  (*Id.* ¶¶ 20–21.)  The individual Detective Verdesoto observed throw the gun was wearing a jacket that appeared to be black, a black hoodie, dark pants, and a skull cap, (*id.* ¶ 22), and he appeared to be a 5'7" tall, 175-pound black male with a beard,[3] (*id.* ¶ 23).  Plaintiff, who is a 5'8" tall, 180-pound black male, had a beard at the time of the incident.  (*Id.* ¶ 24.)

Detective Verdesoto attempted to grab the individual he had observed throw the firearm but was unable to do so because the individual ran away from him.[4]  (*Id.* ¶ 25.)  Officer Forrester and Sergeant DiMartino chased the individual into another building in the Breevort Houses but were unable to apprehend him.  (*Id.* ¶¶ 26–27.)  Meanwhile, Detective Verdesoto retrieved the

---

[2]  Detective Verdesoto maintains that he believed Plaintiff to be the person he saw throw the gun.  (Defs.' 56.1 ¶ 19.)  Plaintiff maintains that, while Detective Verdesoto recognized Plaintiff in the group, "he knew the person who he saw toss a gun was not [Plaintiff]."  (Pl.'s Stmt. of Undisputed Facts pursuant to Local Rule 56.1 ("Pl.'s 56.1") ¶ 19, Docket Entry No. 42-2 (citing Compl. ¶ 15).)

[3]  Plaintiff maintains that, "from the video[,] it is impossible to tell the weight and height of the person seen tossing the gun and [P]laintiff stated in his deposition that the individual did not have a beard."  (*Id.* ¶ 23.)

[4]  Plaintiff maintains that Detective Verdesoto knew that he was attempting to grab someone other than Plaintiff.  (*Id.* ¶ 25.)

gun from the common area and delivered it to members of the NYPD Evidence Collection Team, who determined that it had been loaded and collected DNA evidence.  (*Id.* ¶¶ 28–29.)

### b.   Plaintiff's arrest, indictment, and acquittal

The following day, Detective Verdesoto issued an investigation card ("I-Card")[5] alerting all NYPD officers that there was probable cause to arrest Plaintiff for criminal possession of a weapon.  (*Id.* ¶ 30.)  The same day, a Detective assigned to the case searched Plaintiff's Facebook account and found a photograph of Plaintiff wearing a dark olive-green bomber jacket. (*Id.* ¶ 31; *see also* Facebook Pictures 7–8, annexed to Decl. of Angharad K. Wilson ("Wilson Decl.") as Ex. H, Docket Entry No. 39-8.)[6]  The individual who threw the gun was wearing a dark olive-green bomber jacket,[7] (Defs.' 56.1 ¶ 32), and security camera footage from inside the Breevort Houses depicts this person fleeing while wearing the jacket, which is so dark as to appear black, (*id.* ¶¶ 33–34).

On January 27, 2017, NYPD officers apprehended Plaintiff pursuant to the I-Card and brought him to Detective Verdesoto, who placed him under arrest.  (*Id.* ¶¶ 35–36.)  At the police station, Detective Verdesoto recovered Plaintiff's cellular telephone, deeming it arrest evidence,

---

[5]  "An I-Card is a tool used frequently by the [NYPD] to arrest a suspect who has an open complaint pending against him in lieu of an arrest warrant signed by a judge after charges have been signed."  *People v. Richards*, 36 N.Y.S.3d 49, 2016 WL 483220, at *2 n.4 (Sup. Ct. Feb. 3, 2016) (unpublished table decision); *see also Keith v. City of New York*, No. 11-CV-3577, 2014 WL 6750211, at *2 n.7 (S.D.N.Y. Dec. 1, 2014) ("An I-Card is 'a device detectives use to notify patrol officers that a person is wanted for questioning either as a witness or suspect.'" (quoting *People v. Diaz*, 943 N.Y.S.2d 793, 2011 WL 7036350, at *1 (Sup. Ct. Dec. 22, 2011) (unpublished table decision)), *aff'd*, 641 F. App'x 63 (2d Cir. 2016).

[6]  With respect to the exhibits that are not consecutively paginated, the Court refers to the page numbers assigned by the electronic case filing system.

[7]  Plaintiff disputes this, stating that "Detective Verdesoto stated at [P]laintiff's criminal trial that the person who he saw toss a gun was wearing black, not olive green."  (*Id.* ¶ 32 (citing May 3, 2018 Trial Tr. 80:20–24, annexed to Wilson Decl. as Ex. B, Docket Entry No. 39-2).)

and he and other NYPD detectives questioned Plaintiff about the December 21, 2016 incident. (*Id.* ¶¶ 37–38.)  During the questioning, Detective Verdesoto accused Plaintiff of being the individual who threw the gun, showed Plaintiff video of the incident, and stated that, based on the video, he believed that Plaintiff threw the gun.  (*Id.* ¶¶ 38–40.)  Plaintiff maintained that he was not the individual who threw the gun but did not identify who threw it.  (*Id.* ¶ 41.)  On January 28, 2017, Plaintiff was charged with criminal possession of a firearm and criminal possession of a weapon in the second, third, and fourth degrees via a criminal court complaint signed by Detective Verdesoto, (*id.* ¶¶ 43–44; *see* Criminal Compl., annexed to Wilson Decl. as Ex. J, Docket Entry No. 39-10), and on February 3, 2017, a grand jury indicted him on these charges, (Defs.' 56.1 ¶ 45).

Prior to Plaintiff's trial, the Office of the Chief Medical Examiner issued a report concluding that Plaintiff's DNA was found on the gun Detective Verdesoto recovered.[8]  (*Id.* ¶ 46.)  Plaintiff testified at his deposition that he "does not know" how his DNA ended up on the gun.  (*Id.* ¶ 47.)  In addition, the District Attorney's Office searched Plaintiff's cellular telephone and recovered text messages from the night of the incident in which Cheeks instructed Plaintiff to stay where he was all night and Plaintiff referred to a gun having been recovered.  (*Id.* ¶¶ 48–50.)  In text messages from the day after the incident, Plaintiff's friend inquired as to whether he

---

[8]  Plaintiff disputes this, stating that "Defendants mischaracterize the nature of the . . . report, which does not state conclusively that [P]laintiff's DNA was 'found' on the weapon," but rather "details analysis of a mixture of DNA and concludes that it is more probable than not that [P]laintiff's DNA is included in the mixture."  (*Id.* ¶ 46.)

was incarcerated because the friend had seen Plaintiff running.[9]  (*Id.* ¶ 51.)  These messages were later admitted into evidence at Plaintiff's criminal trial.  (*Id.* ¶ 52.)

Plaintiff was tried before a jury on the charge of criminal possession of a weapon in the second degree and was acquitted on May 11, 2018.  (*Id.* ¶ 58.)  Plaintiff did not testify at trial. (*Id.* ¶ 59.)  Plaintiff filed this action on October 1, 2018.  (*Id.* ¶ 60.)  During Plaintiff's deposition in this lawsuit, he testified that Larry Mackie was the individual who had thrown the gun.  (*Id.* ¶ 61.)  Mackie is a black male who is 5'7" and has a solid build like Plaintiff.  (*Id.* ¶ 62.)

## II.  Discussion

### a.  Standard of review

Summary judgment is proper only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 30 (2d Cir. 2018); *see also Cortes v. MTA N.Y.C. Transit*, 802 F.3d 226, 230 (2d Cir. 2015).  The court must "constru[e] the evidence in the light most favorable to the non-moving party" and "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 107 (2d Cir. 2019) (first quoting *VKK Corp. v. Nat'l Football League*, 244 F.3d 114, 118 (2d Cir. 2001); and then quoting *Johnson v. Goord*, 445 F.3d 532, 534 (2d Cir. 2006)).  The role of the court "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." *Rogoz v. City of Hartford*, 796 F.3d 236, 245 (2d Cir. 2015) (quoting *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010)) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986)).  A genuine issue

---

[9] On the surveillance video that captured the incident, only the individual who threw the gun can be seen running.  (Surveillance Video 8:33:13–19, annexed to Wilson Decl. as Ex. C, Docket Entry No. 39-3.)

of fact exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.  The "mere existence of a scintilla of evidence" is not sufficient to defeat summary judgment.  *Id.*  The court's function is to decide "whether, after resolving all ambiguities and drawing all inferences in favor of the nonmoving party, a rational juror could find in favor of that party." *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000).

### b.  Malicious prosecution claim

Defendants argue that they are entitled to summary judgment on Plaintiff's malicious prosecution claim because (1) Plaintiff cannot rebut the presumption of probable cause created by his grand jury indictment, (2) there was probable cause to prosecute Plaintiff, (3) Plaintiff cannot establish the malice element of his claim, and (4) Defendants are entitled to qualified immunity.  (Defs.' Mem. 10–18.)

Plaintiff argues that Defendants are not entitled to summary judgment on this claim because (1) the grand jury indictment was procured through fraud, perjury, suppression of evidence, or other bad faith, (2) there was no probable cause for his arrest, (3) malice can be inferred from the lack of probable cause, and (4) Defendants are not entitled to qualified immunity.  (Pl.'s Opp'n 8–15.)

The Second Circuit has clarified that "federal law defines the elements of a [section] 1983 malicious prosecution claim, and that a State's tort law serves only as a source of persuasive authority rather than binding precedent in defining these elements." *Lanning v. City of Glens Falls*, 908 F.3d 19, 25 (2d Cir. 2018).  To prevail on a section 1983 claim for malicious prosecution, a Plaintiff is "required to show 'a seizure or other perversion of proper legal procedures implicating [his] personal liberty and privacy interests under the Fourth

Amendment,'" *id.* at 24 (alteration in original) (quoting *Washington v. County of Rockland*, 373 F.3d 310, 316 (2d Cir. 2004)), and "that criminal proceedings were initiated or continued against him, with malice and without probable cause, and were terminated in his favor," *id.* (first citing *Mitchell v. City of New York*, 841 F.3d 72, 79 (2d Cir. 2016); and then citing *Swartz v. Insogna*, 704 F.3d 105, 111–12 (2d Cir. 2013)). Because the lack of probable cause is an element of a malicious prosecution claim, "the existence of probable cause is . . . a complete defense to a claim of malicious prosecution." *Keith v. City of New York*, 641 F. App'x 63, 67 (2d Cir. 2016) (quoting *Stansbury v. Wertman*, 721 F.3d 84, 90 (2d Cir. 2013)) (citing *De Lourdes Torres v. Jones*, 26 N.Y.3d 742, 761 (2016)); *see also Boyler v. City of Lackawanna*, 765 F. App'x 493, 496 (2d Cir. 2019) ("Probable cause is a complete defense to . . . malicious prosecution claims under both § 1983 and New York law.")

> ### i. Plaintiff can rebut the presumption of probable cause and establish malice

Defendants argue that Plaintiff cannot rebut the presumption of probable cause created by his grand jury indictment because he has not adduced any evidence "that Defendants either testified in the grand jury or that their testimony was undertaken in bad faith." (*Id.* at 12.) Relying on this Court's decision in *Soto v. City of New York*, Defendants argue that "Plaintiff has not unsealed the grand jury minutes in this matter and, thus, the only evidence [he] offers to rebut the presumption of probable cause is his own self-serving testimony," which is "mere conjecture and surmise." (Defs.' Reply 4 (quoting *Savino v. City of New York*, 331 F.3d 63, 73 (2d Cir. 2003)).) In addition, Defendants argue that Plaintiff cannot establish the malice element of his claim because malice cannot be inferred where there was probable cause for Plaintiff's arrest, he has not adduced any evidence of malice, and, by his own account of his interview at

the precinct, Detective Verdesoto believed that Plaintiff was the perpetrator.  (Defs.' Mem. 13–14.)

Plaintiff argues that there is "no bright line rule" that a plaintiff must unseal grand jury minutes in order to overcome the presumption of probable cause and that "what was presented to the [g]rand [j]ury can easily be [deduced] from the available evidence."  (Pl.'s Opp'n 12.)  In support, Plaintiff argues that the only evidence available when the grand jury convened was the gun, the surveillance video, Detective Verdesoto's (alleged) testimony, and the photographs from Plaintiff's Facebook page, and "[t]here is no reason to believe that Detective Verdesoto testified to anything other than what he testified to at [P]laintiff's trial, which is that he saw [P]laintiff toss the gun."[10]  (Id.)  Because the surveillance video shows a group of young men exiting the building with the individual at the front of the group wearing a gold jacket and Plaintiff stated in his deposition and affidavit that he was the individual at the front of the group wearing the gold jacket, (Aff. of Pl. Kassin Appling ("Pl.'s Aff.") ¶¶ 4–5, annexed to Decl. of Attorney Alexis G. Padilla, Docket Entry No. 42-1), and because he "provided proof of such at his deposition by pointing to the same Facebook page" showing Plaintiff in a gold jacket, (Pl.'s Opp'n 13; *see also* Pl.'s Dep. Tr. 76:7–78:11, annexed to Wilson Decl. as Ex. A, Docket Entry No. 39-1), Plaintiff argues that a reasonable juror could conclude that Detective Verdesoto lied when he said that it was Plaintiff whom he had seen toss the gun, (Pl.'s Opp'n 13).  In addition, Plaintiff argues that malice can be inferred from the lack of probable cause.  (*Id.* at 14–15.)

---

[10]  As discussed below, the Court understands Plaintiff to be alleging, as he argues elsewhere in his opposition, that "there is evidence that could lead a reasonable juror to conclude that Detective Verdesoto lied when he stated in [the] sworn criminal complaint that he witnessed [P]laintiff toss a gun."  (Pl.'s Mem. 17; *see* Compl. ¶¶ 15–18.)  Because allegations of bad faith conduct outside the grand jury, such as false statements in the criminal complaint, are relevant to whether the record before the Court is sufficient to rebut the presumption of probable cause, the Court considers these allegations.

"[T]he existence of probable cause is a complete defense to a claim of malicious prosecution in New York, and indictment by a grand jury creates a presumption of probable cause." *Delamota v. City of New York*, 683 F. App'x 65, 66 (2d Cir. 2017) (alteration in original) (quoting *Manganiello v. City of New York*, 612 F.3d 149, 161–62 (2d Cir. 2010)); *see also Lewis v. City of New York*, 591 F. App'x 21, 22 (2d Cir. 2015) (same).   A plaintiff may overcome the presumption of probable cause only by presenting evidence that "the indictment was the product of fraud, perjury, the suppression of evidence by the police, or other police conduct undertaken in bad faith." *Debrosse v. City of New York*, 739 F. App'x 48, 50 (2d Cir. 2018) (quoting *Bermudez v. City of New York*, 790 F.3d 368, 377 (2d Cir. 2015)).   Raising doubts about probable cause is insufficient. *Ramashwar v. City of New York*, 231 F. App'x 26, 27 (2d Cir. 2007) (affirming grant of summary judgment where the plaintiff "raised some questions of fact" that "merely tend[ed] to show the absence of probable cause" (quoting *Colon v. City of New York*, 60 N.Y.2d 78, 83 (1983))).   Likewise, where a plaintiff offers merely his version of events to rebut the presumption, this is nothing more than "mere conjecture and surmise" that the plaintiff's indictment was procured as a result of conduct undertaken by the defendants in bad faith, and it is insufficient. *Debrosse*, 739 F. App'x at 50 (quoting *Savino*, 331 F.3d at 73); *see Thorpe v. Duve*, No. 15-CV-736, 2020 WL 5763941, at *5 (S.D.N.Y. Sept. 28, 2020) ("Arguments that [the defendants] were implicitly asking [the plaintiff] to lie by asking her to 'tell the truth' and to give them the 'correct' story is just speculation." (citations omitted)).

Viewed in the light most favorable to Plaintiff, the record is sufficient to rebut the presumption of probable cause created by his indictment.[11]   The Court understands Plaintiff to be

---

[11]   The parties do not dispute the other elements of the claim — that Detective Verdesoto initiated the criminal proceeding against Plaintiff when he filed a sworn criminal complaint on

alleging two bases for his malicious prosecution claim.  First, he alleges that the charges against

him were "based on the false assertion of [Detective Verdesoto] that he saw [P]laintiff toss a

gun," (Compl. ¶ 17), when in fact he was "well aware that [P]laintiff was actually one of the

other four in the group," (*id.* ¶ 15).  Second, he alleges that, in grand jury proceedings related to

these charges, Detective Verdesoto "falsely testified that [he] saw [P]laintiff toss a gun."  (*Id.*

¶ 18.)  As outlined above, the parties have focused the relevant portions of their briefing on only

the latter of these allegations — that is, whether Plaintiff has adduced evidence of Detective

Verdesoto's allegedly false grand jury testimony sufficient to rebut the presumption of probable

cause where he has failed to produce the relevant grand jury minutes.  However, this focus is

misguided.  As this Court noted in *Soto*, even where a plaintiff produces grand jury minutes,

defendants are immune from liability for claims "based on" their grand jury testimony under the

Supreme Court's decision in *Rehberg v. Paulk*, 566 U.S. 356, 369 (2012).  *Soto v. City of New*

*York*, 132 F. Supp. 3d 424, 456 n.39 (E.D.N.Y. 2015) (quoting *Coggins v. Buonora*, 776 F.3d

108, 113 (2d Cir. 2015)); *see also Rehberg*, 566 U.S. at 369 (holding that "a grand jury witness

has absolute immunity from any § 1983 claim based on the witness' testimony"); *Adamou v.*

*Doyle*, 707 F. App'x 745, 746 (2d Cir. 2018) ("Under *Rehberg* . . . , a grand jury witness,

including a law enforcement officer, 'has absolute immunity from any § 1983 claim based on the

witness' testimony,' even if that testimony is perjurious" (quoting *Rehberg*, 566 U.S. at 369));

*Eigner v. Jaeger*, No. 13-CV-3582, 2016 WL 11469503, at *4 (E.D.N.Y. Mar. 28, 2016)

(collecting cases and stating that "[i]n light of the Supreme Court's decision in *Rehberg* . . . , [the

---

January 27, 2017, (Defs.' 56.1 ¶ 43), or that the action was terminated in Plaintiff's favor when a
jury acquitted him on May 11, 2018, (*id.* ¶ 58).

plaintiff] cannot rely on allegedly false grand jury testimony to rebut the presumption of probable cause arising from his indictment").

Although Plaintiff cannot, in light of *Rehberg*, rely on grand jury testimony to rebut the presumption of probable cause created by his indictment, he can rely on Detective Verdesoto's statements in the criminal complaint, where he made the allegedly "false assertion . . . that he saw Plaintiff toss a gun."  (Compl. ¶ 17); *see Eigner*, 2016 WL 11469503, at *4 ("*Rehberg* does not preclude [the plaintiff] from relying on 'allegations of bad faith conduct outside the grand jury' — such as false statements in the criminal complaint — to rebut the presumption of probable cause."  (quoting *Nickey v. City of New York*, No. 11-CV-3207, 2013 WL 5447510, at *7 (E.D.N.Y. Sept. 27, 2013)); *Nickey*, 2013 WL 5447510, at *8–9 (finding, where the plaintiff "never sought the grand jury minutes that led to her indictment and . . . failed to offer any evidence that [it] was procured by fraud, perjury, suppression of evidence or other police misconduct," that "the only basis for a malicious prosecution claim here centers on the probable cause available at the time [the defendant] initiated proceedings by way of felony complaint"); *Carr v. City of New York*, 2013 WL 1732343, at *6 (S.D.N.Y. Apr. 19, 2013) (noting that *Rehberg* does not protect allegedly false statements made in a criminal complaint); *Del Col v. Rice*, No. 11-CV-5138, 2012 WL 6589839, at *14 n.19 (E.D.N.Y. Dec. 18, 2012) ("While *Rehberg v. Paulk* holds that grand jury testimony cannot be the sole basis for a § 1983 claim, courts have allowed malicious prosecution claims to proceed[] where [they] are based on more than false grand jury testimony.").

Because Plaintiff argues not only that Detective Verdesoto "falsely testified" to the grand jury but also that Plaintiff was charged based on Detective Verdesoto's "false assertion . . . that he saw [P]laintiff toss a gun," (Compl. ¶¶ 15–18), and because Plaintiff argues elsewhere in his

12

opposition that "there is evidence that could lead a reasonable juror to conclude that Detective Verdesoto lied when he stated in [the] sworn criminal complaint that he witnessed [P]laintiff toss a gun," (Pl.'s Opp'n 17), the Court analyzes whether Plaintiff has adduced evidence sufficient to rebut the presumption of probable cause based on false statements in the criminal complaint, bearing in mind that "a [section] 1983 plaintiff's testimony alone may be independently sufficient to raise a genuine issue of material fact." *Bellamy v. City of New York*, 914 F.3d 727, 746 (2d Cir. 2019) (citing *Rentas v. Ruffin*, 816 F.3d 214, 221 (2d Cir. 2016)); *Rentas*, 816 F.3d at 221 ("[T]he [d]istrict [c]ourt also faulted [the plaintiff] for failing to produce independent evidence that the defendants lied to prosecutors and for relying instead on his own deposition testimony to contradict the defendants' version of events.  This was also error.  At summary judgment, [the plaintiff] was entitled to rely on his own testimony to establish his malicious prosecution claim."); *see also Rivera v. Rochester Genesee Reel Transp. Auth.*, 743 F.3d 11, 20 (2d Cir. 2014) ("[D]istrict courts should not 'engage in searching, skeptical analyses of parties' testimony in opposition to summary judgment.'" (quoting *Rojas v. Roman Cath. Diocese of Rochester*, 660 F.3d 98, 106 (2d Cir.2011))).

Plaintiff testified in his deposition that he was wearing a gold jacket on the night in question, (Pl.'s Dep. Tr. 55:8–9; 91:15–18; Pl.'s Aff. ¶ 4), that Larry Mackie was wearing an olive-green jacket, (Pl.'s Dep. Tr. 56:21–25, 75:1–78:1), and that Larry Mackie and not Plaintiff threw the gun, (*id.* at 65:15–16; Pl.'s Aff. ¶¶ 9, 16).  It is undisputed that the person who threw the gun was wearing an olive-green jacket, (Defs.' 56.1 ¶ 32), and that Detective Verdesoto "signed a criminal court complaint stating that he observed Plaintiff in possession of a firearm." (*Id.* ¶ 43; Pl.'s Aff. ¶ 19 (stating that Plaintiff "was shown the criminal complaint signed by Detective Wilson Verdesoto, alleging that he saw me toss a gun"); Criminal Compl., annexed to

Wilson Decl. as Ex. J, Docket Entry No. 39-10 (stating that deponent Detective Verdesoto

"states that . . . [he] observed the defendant in possession of [the gun], in that [he] recovered said

[gun] from the ground where [he] observed the defendant throw it").)  While Defendants

maintain that Detective Verdesoto "observed the individual *he believed* was Plaintiff . . . throw a

black firearm," (Defs.' 56.1 ¶ 19 (emphasis added)), Plaintiff maintains that Detective Verdesoto

*knew* that the person he observed throw the gun was not Plaintiff, (Pl.'s 56.1 ¶ 19), and it is

undisputed that Detective Verdesoto was familiar with Plaintiff, recognized him from a prior

investigation, and knew that Plaintiff had a warrant for his arrest.  (May 3, 2018 Trial Tr. ("Trial

Tr.") 69:22–70:24, 72:6–73:7, 77:2–77:14, annexed to Wilson Decl. as Ex. B, Docket Entry No.

39-2.)  Considering the evidence in the light most favorable to Plaintiff and drawing all

permissible inferences in his favor, a reasonable juror could conclude that Detective Verdesoto

recognized Plaintiff as the individual wearing a gold jacket and yet falsely stated in the criminal

complaint that Plaintiff was the individual in the olive-green jacket whom he had seen throw the

gun.  Accordingly, genuine issues of material fact exist as to whether there was probable cause

for Plaintiff's prosecution.  *See Rentas*, 816 F.3d at 221 (finding the plaintiff's deposition

testimony that the defendants lied to prosecutors sufficient to rebut the presumption of probable

cause and vacating summary judgment dismissal of malicious prosecution claim); *Anderson v.*

*City of New York*, No. 16-CV-2583, 2019 WL 1426723, at *6 (S.D.N.Y. Mar. 28, 2019) (finding

the plaintiff's testimony, in which he denied "disobeying orders and behaving in a way that gave

[the defendants] probable cause to arrest him," sufficient to rebut the presumption of probable

cause and denying summary judgment).  Consequently, a genuine issue of material fact also

exists with respect to the malice element of Plaintiff's claim, as a reasonable juror could

conclude that Detective Verdesoto acted due to a wrong or improper motive when he claimed in

the criminal complaint that he had observed Plaintiff throw the gun. *Fulton v. Robinson*, 289 F.3d 188, 198 (2d Cir. 2002) (defining malice as "a wrong or improper motive, something other than a desire to see the ends of justice served" (quoting *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir. 1996))); *Boyd v. City of New York*, 336 F.3d 72, 78 (2d Cir. 2003) ("Once we find an issue of material fact as to probable cause, the element of malice also becomes an issue of material fact as well."); *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 131 (2d Cir. 1997) ("[L]ack of probable cause generally raises an inference of malice sufficient to withstand summary judgment." (citing *Lowth*, 82 F.3d at 573).

### ii.   Qualified immunity

Defendants argue that, even if probable cause did not exist, Detective Verdesoto is entitled to qualified immunity.  (Defs.' Mem. 16–18.)  In support, Defendants maintain that there was arguable probable cause to charge Plaintiff because, even if Larry Mackie was the individual who threw the gun on December 21, 2016, it was reasonable for Detective Verdesoto to mistake Plaintiff for Mackie based on their similar appearances, as they were both part of a group that was clustered together and they are both "African-American men in their twenties with a solid build who stood 5'7" or 5'8"."  (*Id.* at 17–18.)

Plaintiff argues that Detective Verdesoto is not entitled to qualified immunity because "there is evidence that could lead a reasonable juror to conclude that [he] lied when he stated in a sworn criminal complaint that he witnessed [P]laintiff toss a gun," and it is not objectively reasonable for an officer to believe that it is permissible to falsely swear in a criminal complaint. (Pl.'s Mem. 17–18.)  Plaintiff does not address Defendants' argument that it was reasonable for Detective Verdesoto to mistake Plaintiff for Mackie.  (*See generally id.*)

"Qualified immunity protects government officials from civil damages liability 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Jones v. Treubig*, 963 F.3d 214, 224 (2d Cir. 2020) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).  "Thus, pursuant to the two-step framework articulated by the Supreme Court in *Saucier v. Katz*, 533 U.S. 194 (2001), when an official raises qualified immunity as a defense, the court must consider whether: '(1) . . . the official violated a statutory or constitutional right, and (2) . . . the right was "clearly established" at the time of the challenged conduct.'"  *Id.* (quoting *Ricciuti v. Gyzenis*, 834 F.3d 162, 167 (2d Cir. 2016)).  The second prong of the test requires that officers only have "arguable probable cause," meaning "either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met."  *Simpson v. City of New York*, 793 F.3d 259, 268 (2d Cir. 2015) (quoting *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004)); *see also Zellner v. Summerlin*, 494 F.3d 344, 367 (2d Cir. 2007) ("'[I]f officers of reasonable competence could disagree' as to whether probable cause existed, 'immunity should be recognized.'" (alteration in original) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986))).

In light of the Court's above findings, the availability of qualified immunity will depend on the jury's findings of fact with respect to what Plaintiff was wearing on the night in question and whether Detective Verdesoto believed the person he observed throw the gun was Plaintiff or knew him to be someone else.  Therefore, the Court cannot grant qualified immunity on this record.  *See, e.g.*, *Sankar v. City of New York*, 867 F. Supp. 2d 297, 312 (E.D.N.Y. 2012) ("[W]here there is a genuine issue of material fact as to whether probable cause was 'so totally lacking as to reasonably permit an inference that the proceeding was maliciously instituted,' the

16

Court cannot grant a defendant qualified immunity." (citation omitted) (quoting *Martin v. City of Albany*, 42 N.Y.2d 13, 17 (1977))); *Blake v. Race*, 487 F. Supp. 2d 187, 214 (E.D.N.Y. 2007) (holding that where a plaintiff "has created a material issue of fact as to whether the defendants participated in the fabrication of evidence to establish probable cause to . . . prosecute[,] . . . this disputed issue of fact also precludes summary judgment on the issue of qualified immunity"); *Sanders v. City of New York*, No. 12-CV-113, 2015 WL 1469514, at *16 (E.D.N.Y. Jan. 7, 2015) (concluding, after finding genuine issues of material fact with respect to probable cause, that "qualified immunity should be denied on this record").

Because genuine issues of material fact exist with respect to the probable cause and malice elements of Plaintiff's claim, and because Detective Verdesoto therefore is not entitled to qualified immunity on the record before the Court, the Court denies Defendants' summary judgment motion with respect to Plaintiff's malicious prosecution claim.

### c.   Fair trial claim

Defendants argue that they are entitled to summary judgment on Plaintiff's fair trial claim because Detective Verdesoto's testimony identifying Plaintiff as the person whom he had seen throw the gun was neither fabricated nor likely to influence a jury given the other evidence implicating Plaintiff.  (Defs.' Mem. 18–21.)

Plaintiff argues that the Court should deny Defendant summary judgment on his fair trial claim because there are material issues of fact as to whether Detective Verdesoto fabricated evidence by knowingly proffering false testimony and because "Detective Verdesoto's identification testimony was central to the prosecution's case and therefore highly likely to influence a jury's decision."  (Pl.'s Opp'n 18–22.)

To establish a fair trial claim based on fabrication of evidence, a plaintiff must show that "an (1) investigating official (2) fabricates information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result."[12] *Ganek v. Leibowitz*, 874 F.3d 73, 90 (2d Cir. 2017) (quoting *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016)).  The Second Circuit has held that a section 1983 plaintiff may sue an officer for denial of the right to fair trial based on the fabrication of information when the allegedly fabricated information "is the officer's own account of his or her observations of alleged criminal activity, which he or she then conveys to a prosecutor."  *Garnett*, 838 F.3d at 274.

An investigating official may be any governmental actor that investigates alleged criminal activity, which in most cases is a police officer.  *See Garnett*, 838 F.3d at 274 ("[A] [s]ection 1983 plaintiff may sue for denial of the right to a fair trial based on a police officer's fabrication of information."); *Ricciuti*, 124 F.3d at 130 ("When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such . . . action is redressable in an action for damages under [section] 1983.").  A plaintiff need only produce some evidence showing that the officer's statement or evidence is false or

---

[12]  The Supreme Court's dicta in *McDonough* creates an open question as to whether favorable termination is an element of a fair trial claim.  *McDonough v. Smith*, 588 U.S. ---, ---, 139 S. Ct. 2149, 2156 (2019) (holding that the plaintiff "could not bring his fabricated-evidence claim under [section] 1983 prior to favorable termination of his prosecution"); *see also Maradiaga v. City of New York*, No. 16-CV-8325, 2020 WL 5849465, at *5 (S.D.N.Y. Oct. 1, 2020) (quoting *McDonough*, 588 U.S. at ---, 139 S. Ct. at 2156); *Smalls v. Collins*, No. 14-CV-2326, 2020 WL 2563393, at *3 (E.D.N.Y. Mar. 16, 2020) ("Given its recency, few courts in [the Second] Circuit have had occasion to consider whether *McDonough* should be construed as imposing a favorable termination requirement for [section] 1983 fair-trial claims . . . .  Those that have . . . suggest[] that it should be construed as imposing such a requirement.").  The Supreme Court's dicta in *McDonough* is not relevant to the Court's determination in this case.

manipulated.  *See Garnett*, 838 F.3d at 269–70, 279 ("[*A*]*ny* information fabricated by an officer

can serve as the basis of a claim for a denial of the right to a fair trial . . . ."); *Morse v. Fusto*, 804

F.3d 538, 547 (2d Cir. 2015) (holding that the plaintiff's documents showing that the prosecutor

omitted material portions of relevant evidence sufficiently established falsity for denial of fair

trial claim); *Jocks v. Tavernier*, 316 F.3d 128, 138 (2d Cir. 2003) (holding that the plaintiff's

testimony that the information was false was sufficient evidence to satisfy the falsity

requirement).  To satisfy the third element, the fabricated evidence need not actually reach a jury.

The Second Circuit only requires "a showing . . . that the [false] information would likely

influence the jury if it arrived at a jury." *Cook v. City of New York*, 243 F. Supp. 3d 332, 351

(E.D.N.Y. 2017) (alteration in original) (quoting *Garnett v. Undercover Officer C0039*, No. 13-

CV-7083, 2015 WL 1539044, at *8 (S.D.N.Y. Apr. 6, 2015), *aff'd*, 838 F.3d 265, 279 (2d Cir.

2016)).  Whether the fabricated evidence is likely to influence a jury's decision can be satisfied

by showing that the fabricated evidence was material to the prosecutor's case.  *See Garnett*, 838

F.3d at 277 (holding that fabricated evidence is material when it may affect "the prosecutor's

decision to pursue charges rather than to dismiss the complaint without further action" or could

influence "the prosecutor's . . . assessments of the strength of the case").  Proof that a police

officer forwarded the fabricated evidence to a prosecutor can be satisfied by direct evidence that

the officer gave the evidence to the prosecutor or by other evidence from which it can be inferred

that the officer forwarded the fabricated evidence to a prosecutor.  *See Morse*, 804 F.3d at 547

(holding that it was clear that the fabricated evidence was forwarded to a prosecutor because the

prosecutor used the fabricated evidence during a grand jury proceeding).  A plaintiff can

establish a deprivation of liberty through the number of court appearances a plaintiff made post-

arraignment, constraints such as bail requirements, a period of incarceration, or travel

restrictions.  *See Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 117 (2d Cir. 1995) (noting that "any

post-arraignment deprivations of liberty (such as being bound-over for trial) might" be adequate

to maintain a section 1983 claim); *Arbuckle v. City of New York*, No. 14-CV-10248, 2016 WL

5793741, at *10–11 (S.D.N.Y. Sept. 30, 2016) (collecting cases).  However, "there can be no

question" that a plaintiff suffered a deprivation of liberty when he was "physically detained

following arraignment."  *Murphy v. Lynn*, 118 F.3d 938, 944 (2d Cir. 1997).  Because materiality

(element three) and causation (element five) are two distinct elements, "the fact that allegedly

fabricated evidence would be inadmissible at trial by itself is not a bar to the claim."  *Cook*, 243

F. Supp. 3d at 351 (quoting *Soomro v. City of New York*, 174 F. Supp. 3d 806, 816 (S.D.N.Y.

2016)).

     Unlike a false arrest or malicious prosecution claim, "'[p]robable cause is not a defense'

to a claim for a denial of the right to a fair trial" based on the fabrication of evidence.  *Garnett*,

838 F.3d at 277 (alteration in original) (quoting *Jovanovic v. City of New York*, 486 F. App'x

149, 152 (2d Cir. 2012)).  Qualified immunity is also unavailable on "a claim for denial of the

right of a fair trial where the claim is premised on proof that a defendant knowingly fabricated

evidence and where a reasonable jury could so find."  *Morse*, 804 F.3d at 550.  However,

witnesses who provide information to prosecutors in judicial proceedings have absolute

immunity for the testimony they provide.  *See Jovanovic*, 486 F. App'x at 152.

     Plaintiff has presented evidence that, if believed, would permit a reasonable jury to find

that Detective Verdesoto fabricated information likely to influence a jury's verdict.  The parties

do not dispute that Detective Verdesoto was familiar with Plaintiff and recognized him on the

night in question, that from ten feet away in a well-lit area he witnessed someone in an olive-

green jacket throw a gun, or that video footage shows the person who threw the gun to have been

wearing an olive-green jacket.  (Defs.' 56.1 ¶¶ 12–16, 19–22, 32–34.)  Detective Verdesoto testified that the individual in the olive-green jacket whom he had seen throw the gun was Plaintiff, (Trial Tr. 77:19–23), and a contemporaneous picture of Plaintiff wearing an olive-green jacket supports his testimony, (Facebook Pictures 7–8).  However, Plaintiff has submitted an affidavit in which he avers that he was standing at the front of the group wearing a gold jacket that night, (Pl.'s Aff. ¶¶ 4–5), and the same surveillance video and Facebook pictures that Defendants rely on also show an individual in a gold jacket on the night in question and show Plaintiff in a gold jacket, respectively.  (Facebook Pictures 7.)  Therefore, a reasonable juror could conclude that while Detective Verdesoto recognized Plaintiff, he lied when he testified that Plaintiff was the individual in the olive-green jacket whom he had seen toss the gun.

Citing *Lauderdale*, *Bellamy*, and *Greene* for the propositions that "a mere difference in testimony" and "sheer speculation" are insufficient to create a genuine dispute of material fact, Defendant argues that "Plaintiff has offered no admissible evidence that Defendant[] fabricated [his] identification of [Plaintiff] other than his own denials that he was the person who threw the gun."  (Defs.' Mem. 19 (first citing *Lauderdale v. City of New York*, No. 15-CV-1486, 2018 WL 1413066, at *8–9 (S.D.N.Y. Mar. 19, 2018); then citing *Bellamy v. City of New York*, 12-CV-1025, 2017 WL 2189528, at *35 (E.D.N.Y. May 17, 2017), *aff'd in part and vacated in part*, 914 F.3d 727 (2d Cir. 2019); and then citing *Greene v. City of New York*, No. 08-CV-243, 2017 WL 1030707, at *25 (E.D.N.Y. Mar. 15, 2017), *aff'd*, 742 F. App'x 532 (2d Cir. 2018)).  However, as the Second Circuit reaffirmed when it vacated the portion of *Bellamy* upon which Defendant relies, "a [section] 1983 plaintiff's testimony alone may be independently sufficient to raise a genuine issue of material fact."  914 F.3d at 745 (citing *Rentas*, 816 F.3d at 221).  Accordingly, as discussed above, Plaintiff's testimony that he was wearing a gold jacket rather than an olive-

green jacket, (Pl.'s Dep. Tr. 55:8–9; 91:15–18; Pl.'s Aff. ¶ 4), that Larry Mackie was wearing an

olive-green jacket, (Pl.'s Dep. Tr. 56:21–25, 75:1–78:13),[13] that Larry Mackie and not Plaintiff

threw the gun, (*id.* at 65:15–16; Pl.'s Aff. ¶¶ 9, 16), and that Detective Verdesoto recognized

Plaintiff and knew the person whom he had seen throw the gun was not Plaintiff, (Pl.'s 56.1

¶¶ 19, 23, 25), is sufficient to raise genuine issues of material fact as to whether Detective

Verdesoto fabricated information when he testified that Plaintiff was the individual in the olive-

green jacket whom he had seen throw the gun.[14]   *See Bellamy*, 914 F.3d at 746–47 (reversing

grant of summary judgment on fair trial claim where defendant detective had testified that the

plaintiff made an unsolicited statement while in the detective's squad car that he had not

committed a murder and the plaintiff had consistently denied making the statement, including in

his deposition, rendering possible the inference that the detective had fabricated the murder

statement); *Marom v. Blanco*, No. 15-CV-2017, 2019 WL 3338141, at *9 (S.D.N.Y. July 25,

2019) (denying summary judgment on fair trial claim where the defendant testified that the

plaintiff resisted arrest in various ways and the plaintiff gave contradicting testimony that she did

not resist arrest because "[t]his testimony creates a triable issue with respect to the element of

fabrication" (citing *Bellamy*, 914 F.3d at 746)); *McKenzie v. City of New York*, No. 17-CV-4899,

2019 WL 3288267, at *16 (S.D.N.Y. July 22, 2019) ("[The plaintiff] disputes as untruthful the

factual accusations made [against him].  That alone would permit his claim of fabrication to

---

[13]   The Court notes that pages fifty-seven, fifty-eight, and sixty-seven through seventy-four of Plaintiff's deposition are missing from the transcript provided by Defendants.  (*See* Pl.'s Dep. Tr. 56–75, annexed to Wilson Decl. as Ex. A, Docket Entry No. 39-1.)

[14]   Although Defendants argue that, "by Plaintiff's own account, Detective Verdesoto believed Plaintiff to be the perpetrator," (*see* Defs.' Mem. 19 (citing Defs.' 56.1 ¶¶ 38–40)), this statement is not entirely accurate.  Rather, Plaintiff concedes that Detective Verdesoto *stated* that he believed Plaintiff was the person who threw the gun while questioning Plaintiff at the precinct.  (*See* Defs.' 56.1 ¶¶ 38–40.)

reach a jury." (citing *Bellamy*, 914 F.3d at 746)).  In addition, although there was other evidence

to implicate Plaintiff, Detective Verdesoto's testimony that he observed Plaintiff remove the gun

from his pocket and throw it would be "likely to influence a jury's verdict" because it would be

material to whether Plaintiff possessed the firearm.  *See* N.Y. Penal Law § 265.03.  Accordingly,

the Court denies Defendants' summary judgment motion as to Plaintiff's fair trial claim.

## III.  Conclusion

For the reasons stated above, the Court denies Defendants' summary judgment motion as

to Plaintiff's claims for malicious prosecution and denial of a fair trial against Detective

Verdesoto.  Because Plaintiff concedes his claims against the City of New York and Police

Officer Forrester and has failed to address Defendants' arguments concerning his claims for false

arrest and deprivation of liberty without due process with respect to Detective Verdesoto, the

Court dismisses these claims.

Dated: February 23, 2021
       Brooklyn, New York

                                   SO ORDERED:


                                   _____s/ MKB_____
                                   MARGO K. BRODIE
                                   United States District Judge